OPINION OF THE COURT
John R. Cannizzaro, J.
This is a motion by defendant for summary judgment and plaintiff’s cross motion for the same relief against the defendant.
Plaintiff is an officer of a check cashing company who maintains an account with defendant bank. On September 15, 1982, plaintiff deposited several checks into the corporation’s checking account, one of which was payable to the order of Eleanor Taylor in the sum of $700. As is customary, defendant provisionally credited the deposit to the account. The following day, September 16, the check was forwarded through regular banking channels to the payor bank, the Bank of New York, in White Plains, New York. *723 On September 23, the Federal Reserve Bank of New York returned the check to defendant as an unpaid item. Defendant, on September 24, prepared a debit ticket which was personally handed to plaintiff when he came into the bank and the check cashing company’s account was debited accordingly. Plaintiff requested that the check be redeposited a second time; and this was done on the following Monday, September 27. Again, there was a provisional credit to the company account and, again, on October 5, the check was returned unpaid. Defendant debited the company’s account accordingly and notified plaintiff.
Plaintiff now alleges that the defendant failed to act timely in notifying plaintiff that the check was dishonored by the Bank of New York in White Plains, New York, thereby causing plaintiff to sustain a loss.
Subdivision (d) of section 4-105 of the Uniform Commercial Code states that a collecting bank “means any bank handling the item for collection except the payor bank”. Defendant is not a payor bank as it was not the bank by which the item was payable as drawn or accepted. (See Uniform Commercial Code, § 4-105, subd [b].)
Section 4-202 sets forth the responsibilities of a collecting bank and that section states:
“(1) A collecting bank must use ordinary care in
“a) presenting an item or sending it for presentment; and
“b) sending notice of dishonor or non-payment or returning an item other than a documentary draft to the bank’s transferor or directly to the depository bank under subsection (2) of Section 4-212 after learning that the item has been paid or accepted, as the case may be; and
“c) settling for an item when the bank receives final settlement; and
“d) making or providing for any necessary protest; and
“e) notifying its transferor of any loss or delay in transit within a reasonable time after discovery thereof.
“(2) A collecting bank taking proper action before its midnight deadline following receipt of an item, notice or payment acts seasonably; taking proper action within a reasonable longer time may be seasonable but the bank has the burden of so establishing.
*724 “(3) Subject to subsection (1) (a), a bank is not liable for the insolvency, neglect, misconduct, mistake or default of another bank or person or for loss or destruction of an item in transit or in the possession of others.”
In the case at bar, there is nothing in the record to indicate that the defendant failed to exercise ordinary care in sending the check for presentment or giving notice of dishonor.
Ordinary care obligates a collecting bank to take seasonable action on the item. (Whitehall Packing Co. v First Nat. City Bank, 55 AD2d 675.) A bank acts seasonably if it takes proper action before its midnight deadline. (Uniform Commercial Code, § 4-202, subd [2].) The midnight deadline “is midnight on its next banking day following the banking day on which it receives the relevant item or notice” (Uniform Commercial Code, § 4-104, subd [1], par [h]).
In this instance, the bank acted seasonably in sending the item for presentment and in giving notice of dishonor, indicating that the bank exercised ordinary care. The bank was also obligated to exercise ordinary care with respect to routing the item to the payor bank. (Uniform Commercial Code, § 4-202, Comment 2.) Subdivision (1) of section 4-204 states that “[a] collecting bank must send items by reasonably prompt method taking into consideration any relevant instructions, the nature of the item, the number of such items on hand, and the cost of collection involved and the method generally used by it or others to present such items.” Defendant, in its moving papers, states that the item was presented through regular banking channels. There is nothing to indicate that the method used was not the method generally used to present such items, especially in light of defendant’s Exhibit D in their original moving papers which shows approximately 40 items returned as unpaid, including the item involved here, all of which were processed in the same exact manner.
There is also nothing to indicate that defendant did not send the item “by reasonably prompt method”. From the time the item was presented at the defendant bank on September 15 until the time plaintiff was notified of dishon- *725 or of the item on September 24, eight banking days had passed. Plaintiff makes much of this and takes the position that this is unreasonable.
The court is of the opinion that the time elapsed is not unreasonable. The item was first presented at defendant bank, then it was forwarded to a clearing house or Federal Reserve Bank, then to the payor bank, back to the Federal Reserve Bank and finally to defendant bank. The facts are undisputed that the item was received by defendant on September 15 and forwarded on September 16, this being seasonable under section 4-202 of the Uniform Commercial Code. It is also undisputed that defendant received the item from the Federal Reserve Bank on September 23 and presented it for dishonor to plaintiff on September 24, again acting seasonably. Therefore, of the eight banking days involved, four are definitely and indisputably accounted for. It is not unreasonable to account for the remaining four days as being consumed by the clearing house or Federal Reserve Bank, the payor bank and the Federal Reserve Bank again. Therefore, it is the court’s decision that defendant exercised ordinary care in routing the item by a “reasonably prompt method”.
It should be further pointed out that a collecting bank, while obligated under section 4-204 to send items by a reasonably prompt method, is not responsible for the neglect, misconduct, mistake or loss of an item in transit or in the possession of others. (Uniform Commercial Code, § 4-202, subd [3].) Defendant was obligated to exercise ordinary care in routing the item and was not or could not be expected to guarantee the actions of others.
Lastly, on the issue of ordinary care, subdivision (3) of section 4-103 of the Uniform Commercial Code states that “[a]ction or non-action approved by this Article or pursuant to Federal Reserve regulations or operating letters constitutes the exercise of ordinary care and, in the absence of special instructions, action or non-action consistent with clearing house rules and the like or with a general banking usage not disapproved by this Article, prima facie constitutes the exercise of ordinary care.” The acts of defendant concerning its handling of the item, *726 routing of the item and notifying plaintiff of dishonor of the item were, as discussed above, approved by article 4.
The plaintiff now urges the court to find that defendant did not exercise ordinary care by taking judicial notice that defendant failed to comply with the so-called “five-day” rule. Plaintiff argues that under this rule, a depositor may draw upon a check on an out-of-town bank five business days after it has been deposited. Plaintiff next argues that since defendant bank didn’t notify plaintiff within five business days that the item was returned unpaid, the loss was shifted from the plaintiff to defendant.
Plaintiff’s argument cannot prevail because: First, there is no written rule or regulation under the Uniform Coim mercial Code, the Banking Law or Federal Reserve banking laws or regulations which substantiates plaintiff’s argument. Secondly, the court may take judicial notice of any fact which is “a matter of common and general knowledge, well established and authoritatively settled, not doubtful or uncertain.” (Ecco High Frequency Corp. v Amtorg Trading Corp., 81 NYS2d 610, 617; Matter of Buszta, 18 Misc 2d 716.) The “five-day” rule is neither common knowledge, nor well established or authoritatively settled. The court, on its own volition, took a survey of three local banks and found that the number of days which must pass before a depositor may draw on an out-of-town check varies from bank to bank, in this case, 6, 8 and 10 days, respectively, for the banks surveyed. Therefore, the court cannot take judicial notice of plaintiff’s “five-day” rule.
Assuming, arguendo, that the “five-day” rule did exist, plaintiff would have been able to draw against the check but this wouldn’t preclude the defendant from charging the unpaid item back to plaintiff’s account as a debit. Subdivision (1) of section 4-212 of the Uniform Commercial Code states that where a bank has given provisional settlement for an item and the item is subsequently dishonored the bank may revoke the settlement and charge back any credit given for the item to its customer’s account if the bank sends notification to its client by its midnight deadline. The defendant learned of the dishonor on September 23 and notified its client on September 24, all within the midnight deadline as defined by section 4-104 *727 (subd [1], par [h]) of the Uniform Commercial Code. Subdivision (4) of section 4-212 further provides that the right to charge back is not affected by prior use of the credit or failure of any bank to exercise ordinary care with respect to the item although the failing bank remains liable. Official Comment 5 to section 4-212 states that “[t]he rule of subsection (4) relating to charge-back applies irrespective of the cause of the nonpayment, and of the person ultimately liable for nonpayment. Thus charge-back is permitted even where nonpayment results from the depository bank’s own negligence.” Comment 6 states that “[i]t is clear that the charge-back does not relieve the bank from any liability for failure to exercise ordinary care in handling the item. The measure of damages for such failure is stated in Section 4-103 (5).”
Therefore, even if defendant failed to exercise ordinary care, defendant still had the right to charge back the dishonored item, and plaintiff would have then been relegated to collecting damages under subdivision (5) of section 4-103 which states that “[t]he measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence.”
There are no allegations of bad faith on the part of defendant so plaintiff’s damages would be the amount of the item reduced by an amount which could not have been realized by the use of ordinary care. Again, plaintiff would be unable to collect from defendant.
Defendant, in its original moving papers, has attached as Exhibit C a letter from the City of 'White Plains City Court, the maker of the draft to Eleanor Taylor. The letter is dated September 15, 1982 and addressed to the Bank of New York in White Plains, requesting a stop payment on said check. Therefore, no matter how soon defendant had the item delivered to the payor bank, the item would still have been returned unpaid, there being a stop payment order on the same day as defendant received the item. Even if defendant exercised the utmost care in forwarding the check, plaintiff would be precluded from recovering *728 even 1 cent under subdivision (5) of section 4-103 of the Uniform Commercial Code in light of the stop payment letter.
Accordingly, defendant’s motion for summary judgment is granted and plaintiff’s cross motion for summary judgment is denied.